O'NEILL v. O'NEILL.

An unpaid due bill signed by a decedent in favor of another and found among his papers after his death, is not of itself sufficient to establish an existing legal obligation. But where coupled with confidential communications by decedent to his brother and executor, made orally just before his death and contained in a letter found in his private box after death, stating that it represented an amount of money belonging to the payees of the due bill "mislaid or mismanaged" by decedent while their confidential agent, and which he thereby instructed his brother and executor to pay in some private manner, the due bill will be sustained as evidence of a debt due by the decedent to the payees.

---

Before KERSHAW, J., Charleston, June, 1881.

The facts of this case are all stated in the opinion. Upon these facts W. D. Clancy, Esq., master, to whom the case had been referred for inquiry and report, reported as follows:

The character of the paper found in the tin box of Edward O'Neill, addressed to his brother (Dennis O'Neill), and containing a due bill in favor of Douglass, Jackson & Pickett for fifteen

hundred dollars, not delivered to them in the life-time of the testator, is not such an obligation to pay money as will warrant the executor in paying this sum as a legally established claim against the estate of the testator. The will of Edward O'Neill must be regarded as the voice of the dead man speaking as to all dispositions to be made of his estate, and any other paper lacking the formality required by law, however solemn its moral import, is, as a legal paper, null and void. The executor in this case gave public notice, calling upon persons having claims against the estate of Edward O'Neill to come in and establish the same. It does not appear that Douglass, Jackson & Pickett made any claim as creditors, nor is it surprising that they did not from the nature of O'Neill's letter.

Jackson and Pickett, survivors of Douglass, Jackson & Pickett, excepted to this report. Upon this exception the circuit decree was as follows:

There can be no doubt that in some manner, known only to the deceased, he was indebted to Douglass, Jackson & Pickett, in this amount; that the obligation to pay it pressed on his conscience, and that discharging himself of the obligation by payment of the money, he wished to conceal from the parties all knowledge of his connection with the money so paid. It is not possible to discover that secret, which he carried with him to the grave. It is not necessary that it should be known. His confession of his indebtedness is the highest evidence that can be given of the fact that he owed this money to these parties, and that he died in the expectation that they would receive it. If it has so happened that the secrecy he so much desired has not been secured, that does not affect the question of fact of his indebtedness. Of that, there cannot be a doubt; the evidence establishes the fact of the indebtedness of the testator to Douglass, Jackson & Pickett, for the sum of fifteen hundred dollars, and the exception of the parties to the report of the master on this point is sustained, and the report as to this overruled. * * * It is therefore ordered and decreed, that Douglass, Jackson & Pickett be entitled to receive from the assets of Edward O'Neill in the hands of the plaintiff, as his executor, the sum of fifteen hundred dollars, with interest from May 26th,

1879, the date of the written admission of indebtedness; and to have execution therefor, if not paid by the plaintiff; and that the costs of the case be paid from the assets of the testator in the hands of the executor, &c.

From this decree, Mrs. Catherine O'Neill appealed upon five exceptions. The first is immaterial; the others were as follows:

2. Because the Circuit Judge erred in holding that the "letter and due bill" signed by the testator, and found in his private box after his decease, but which had never been delivered to any one in his life-time, were evidence of the fact that the said Edward O'Neill was indebted to Douglass, Jackson & Pickett, at the time of his decease, in the sum of fifteen hundred dollars.

3. Because the Circuit Judge erred in not holding as matter of law that the *onus* was on Douglass, Jackson & Pickett to show affirmatively that the testator was indebted to them, at the time of his decease, in the sum of fifteen hundred dollars; and further, in not finding that the evidence established simply, that prior to his death the testator imagined that he was indebted to them by reason of some supposed mismanagement or want of care in respect to the moneys which had come into his hands as their agent.

4. Because the Circuit Judge erred in decreeing that Douglass, Jackson & Pickett were "entitled to receive from the assets of Edward O'Neill, in the hands of the plaintiff, as his executor, the sum of fifteen hundred dollars, with interest from May 26th, 1879."

5. Because the Circuit Judge erred in admitting as evidence the statements made by the testator to the plaintiff, Dennis O'Neill.

*Messrs. Hayne & Ficken,* for appellant.

*Mr. A. G. Magrath,* contra.

January 9th, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. The sole question raised by this appeal is whether the estate of the testator, Edward O'Neill, is

liable to pay the survivors of Douglass, Jackson & Pickett a certain alleged debt, for at the argument here the last ground of appeal was abandoned.

The circumstances which gave rise to this claim are peculiar, and may be stated as follows : Edward O'Neill had been for many years in the employment of Douglass, Jackson & Pickett, proprietors of extensive livery stables in the city of Charleston, and had eventually become their confidential clerk and general manager. In 1879 his health began to fail, and, being about to remove to Summerville, he made a confidential communication to his brother Dennis, the plaintiff in this case, which was testified to by Dennis at the hearing before the master, in the following words : " My brother told me, when his health was failing, and when he was about to go to Summerville, that I would find instructions in a letter, in his tin box, what to do in reference to a certain sum of money mismanaged or mislaid during the time when he was in the employment of Douglass, Jackson & Pickett."

The testator died June 27th, 1879, leaving a will dated May 20th, 1879, whereby he appointed his brother Dennis executor, and guardian of his child or children, and, after providing for the payment of all his just debts and funeral expenses, devised and bequeathed his whole estate to his wife, for life, or during widowhood, with remainder to his child or children. The will was duly admitted to probate, the executor qualified and published the usual notice to creditors to present their demands, but no claim was presented by Douglass, Jackson & Pickett, for the reason, as they allege, that they did not then know of any indebtedness on the part of the testator to them. The executor having procured the key of the tin box above referred to, from the testator's house, repaired to the office of the judge of probate in company with the counsel of the widow, where the tin box, which had been obtained from the safe of Douglass, Jackson & Pickett, where the testator was in the habit of keeping it, was opened and found to contain, amongst other things, the will of the testator, and a sealed envelope, addressed " Dennis O'Neill, private," upon which was the following endorsement : " Don't

open this as long E. O'N. is living." The envelope, when opened, was found to contain the following letter :

" Dear Brother—Pay the amount over to Douglass, Jackson & Pickett, when Wm. Jackson pays you over five thousand dollars. Send it to them by express, so they will not be able to find out who sent it. It will be all right as long as they get the money. This is as near as I can come to the amount. Ask them to forgive me if it is any more. Your B., E. O'Neill. May 26th, 1879."

On the opposite page of the same sheet of paper upon which this letter was written, is the following :

" Charleston, S. C., May, 1879.
" Due Douglass, Jackson & Pickett, fifteen hundred dollars for value received.
" $1,500. E. O'NEILL."

The executor having instituted proceedings for the settlement of the estate of his testator, brought to the attention of the court this claim in favor of Douglass, Jackson & Pickett, to the payment of which the widow objected upon the ground that the claim was not a legal one, whereupon the survivors of Douglass, Jackson & Pickett intervened by petition and asked to have the claim paid.

There is no other evidence in support of the claim, except that above stated, and the question for us to determine is whether this evidence is sufficient to establish the claim. The mere fact that the testator signed a paper in the form of a due bill, acknowledging himself indebted to Douglass, Jackson & Pickett in the sum of $1,500, is certainly not of itself sufficient, for the so-called due bill was never delivered. 1 *Dan. Neg. Inst.*, § 63. But the question is whether this, taken in connection with the other evidence, may not be sufficient to establish the legality of the claim. The reason why a paper in the form of a note constitutes no evidence of indebtedness until it is delivered, is because the transaction is inchoate as long as the paper remains

in the possession of the maker, and, at most, only furnishes evidence of an intention to give the note, which may or may not ripen into an act. Until it is delivered, it is entirely under the control of the maker and may be destroyed or canceled by him. It cannot by itself even be regarded as an admission of liability, for, until it is delivered, or until the maker does some irrevocable act showing an intention to deliver, it is simply an admission to himself and amounts to no admission at all. But where a person, after signing such a paper, retains it in his possession, and does other acts or makes other declarations, showing that the retention of possession was not for the purpose of enabling him to destroy or cancel it, in case he should change his mind, but for another and different purpose, entirely consistent with the idea that the paper was regarded by him as the evidence of an absolute, binding contract, constituting a valid obligation, then it seems to us that such a paper may be regarded as furnishing evidence of a legal liability.

There cannot be a doubt, from the evidence in this case, that the testator thought that he was indebted to Douglass, Jackson & Pickett, and that such liability grew out of the fact that while he was in the employment of that firm, he had so improperly "mismanaged or mislaid" some of their money as to make him liable for the same, and that he displayed extreme anxiety to keep this a secret, especially from his employers. This conclusively shows that his sole purpose in retaining possession of the paper in the form of a due bill was to conceal the facts which gave rise to the indebtedness, and not for the purpose of enabling him to cancel the evidence of such indebtedness, or to recall the admission contained in the paper. His declaration to his brother before his death, was an implied admission that he was liable to make good the loss resulting from his mismanagement, the particulars of which were known only to himself; and this, coupled with his written instructions to his brother as to how he wished the loss repaired, cannot be construed in any other light than as an admission of liability and a promise to pay the same, and then the written memorandum in the form of a due bill indicated the amount for which he admitted his liability.

The whole evidence, taken together, amounts to the same thing as if he.had said to his brother, " While I was in the employment of Douglass; Jackson & Pickett, I so mismanaged their funds as to make me liable to them in a sum which you will find stated in a paper in the form of a due bill in my tin box ; and this amount I wish you to pay them in such a way that they may not know from whom it comes." If he had said this, could any one doubt that the evidence would be sufficient to establish the legality of the claim?

Suppose he had said to his brother: " I owe the estate of a. neighbor, who has recently died, a sum of money, which I'borrowed from him shortly before his death, under circumstances that I do not wish disclosed, but gave him no note or other evidence of such indebtedness, and I wish you to pay the debt in such a way as that it may not be known from whom it comes, and you will find the amount stated in a memorandum amongst my private papers." Such a declaration, whether made orally or in writing, would not be testamentary in its character, but would be simply furnishing the evidence of an indebtedness incurred during his life-time. So, here, the indebtedness of the testator to Douglass, Jackson & Pickett arose during his lifetime, but he did not choose to let any one have access to the evidence of such indebtedness until after his death, and, therefore, took care to let his brother, whom he had selected as his executor, know where such evidence could be obtained after his death.

We agree, therefore, with the Circuit judge, that the evidence adduced was sufficient to establish the claim set up by the survivors of Douglass, Jackson & Pickett.

The judgment of this court is that the judgment of the Circuit Court be affirmed.